CHICOPEE MANUFACTURING CORPORATION, Appellee,

v.

KENDALL COMPANY, Appellant.

No. 8203.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1961.

Decided March 28, 1961.

See, also, D.C., 154 F.Supp. 248.

Hector M. Holmes, Boston, Mass. (F. Dean Rainey, Greenville, S. C., H. L. Kirkpatrick and Edgar H. Kent, Boston, Mass., on brief), for appellant.

Floyd H. Crews, New York City (Wyche, Burgess & Wyche, Alfred F. Burgess, Greenville, S. C., Darby & Darby, Harvey W. Mortimer, New York City, and Charles A. Harris, Cheraw, S. C., on brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

This case involves the validity and infringement of United States Patent No. 2,691,391 and Reissue Patent No. 24,139 for noncorrugating textile fabric that has been used primarily for the manufacture of babies diapers. The original patent was issued to Jamison and Yates, assignors to Chicopee Manufacturing Company, the plaintiff in this case, on October 12, 1954, upon an application filed June 18, 1951, and the patent was reissued on April 10, 1956, upon an application filed January 26, 1956. This appeal is taken from an order judgment of United States District Judge Ashton H. Williams of the Eastern District of South Carolina, sitting in the Western District of South Carolina, whereby the patents were held valid and infringed by the Kendall Company, the defendant. The plaintiff was held entitled to treble damages and its attorneys to a reasonable counsel fee to be paid by the defendant.

The judgment order was cast in the form of an opinion and was filed May 12, 1960, after the parties had filed briefs. It set forth the applicable principles of patent law and findings of fact in general terms to the effect that the inventors had successfully solved a problem with which the scientific research departments of both parties to the case had struggled for fifteen years and that the new invention had had instant and widespread commercial success and had been copied by the defendant. It was announced in the opinion that the court would file another order (opinion) later. On June 15, 1960, an elaborate opinion of thirty-two pages was filed in which specific findings of fact were made and the legal issues were discussed. The conclusions of law of the order of May 12, 1960 were affirmed, except that it was stated that there could be no recovery under the original patent because it was surrendered when the reissue was granted. This formal opinion and order of June 15, 1960 was prepared by the attorneys of the plaintiff upon the request of the District Judge without notice to the attorneys for the defendant. It was filed by the District Judge without change except for minor immaterial alterations on the first and last pages.

The invention relates to a low-count textile fabric whose warp yarns are twisted according to a plan so that the

fabric will lie flat and will not corrugate or wrinkle when laundered in washing machines. The yarns or threads of a textile fabric are spun or twisted to a greater or less degree when they are being woven. They are called "Z yarns" if the twist is right-hand or regular and "S yarns" if the twist is left-hand or reverse. When a woven fabric is laundered the yarns swell and tend to untwist, thereby releasing energy which shortens their length and produces shrinkage of the yarns and the fabric. If all the yarns of the warp or of the weft are of one twist, either Z or S, the untwisting force is exerted in one direction only upon the other set of yarns which cross them; and if the force is greater in one set than in the other, they dominate and tend to form waves with crests and troughs so that the fabric becomes distorted and wrinkled and will not lie flat. Corrugations may be desirable in some materials, such as crepe for ladies' dresses, but are most objectionable in material designed for babies diapers. The inventors found and the patent teaches, however, that if the yarns of the set of warp or weft are alternately S and Z, the untwisting forces released upon wetting tend to oppose and neutralize one another and the buckling of the fabric occurs irregularly and only small wrinkles are produced so that the fabric will lie flat after it is laundered.

This is the gist of the patent. The specification of the patent explains that the result is accomplished *"by reversing the twist spun into one out of every two to four warp yarns* in the fabric so that they are of opposed twists to the other warp yarns". The *preferred* fabric is depicted in a figure in the specification, which shows a cotton diaper that is described as woven *"with alternate warp yarns having a right-hand twist and the remainder of the warp yarns having* a left-hand twist". [Emphasis supplied.]

This description in the specification of the use of the reverse twist in one out of every two to four of the warp yarns and the accompanying illustration of a diaper with alternate warp yarns of right and left-hand twists bespeak a procedure that may be varied, but in each instance is to be carried out with regularity. The reverse twist makes its appearance in one out of every two to four warp yarns. This method was prescribed in all of the twelve claims in the original application for the patent that was filed on June 18, 1951. They described the fabric of the invention as comprising "twisted crosswoven yarns, the twist in one out of every two to four yarns running in one direction in the fabric being reversed with respect to the twist in the remainder of the yarns disposed in the fabric". This precise language, however, was subsequently eliminated from the claims and a new description of the twist was substituted, as will be seen in the following outline of the proceedings in the Patent Office. All of the original claims were rejected on March 11, 1952, on the ground, amongst others, that the use of an alternate twist in alternate warp yarns had been shown in earlier patents including the Teufel patent No. 889,827 of 1908 and the Schonholzer patent No. 2,215,938 of 1940. In response to this rejection the inventors, on September 3, 1952, cancelled all the claims but the first four and asked reconsideration of their rejection. These four claims were again rejected on April 30, 1953 as failing to patentably distinguish over the prior art. Thereafter, on October 30, 1953, the inventors cancelled these four claims and added two new claims in which the regular reverse twist procedure, described above, was abandoned and in lieu thereof the woven fabric was described as having "25 to 50 per cent of its dominant yarns possessing a twist reverse from that of the remainder of the dominant yarns and *distributed throughout the fabric in a manner sufficiently regular to prevent corrugation* when the fabric is laundered by techniques involving high centrifugal and tumbling forces". [Emphasis supplied.]

On January 21, 1954, the two new claims, 13 and 14, were rejected as vague and indefinite since, by saying that the reverse twist dominant yarns should be

distributed "in a manner sufficiently regular to prevent corrugation", they described the problem rather than the structure that would solve it. It was pointed out that the use of conveniently indefinite language in respect to the precise point of novelty had been held fatal to a patent in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. Finally, however, after an interview between a representative of the inventors and the examiner in the Patent Office, claim 13 was cancelled and the patent was issued on October 12, 1954, with a single claim as follows:

"An unstiffened low-count, cross woven fabric having all of its yarns possessing a twist multiplier no greater than 4.75 and wherein the shrinkage forces released on wetting are dissipated by local compensating disturbances and not transmitted throughout the entire fabric, said fabric having 25 to 50 per cent of its warp yarns possessing a twist reverse from that of the remainder of the warp yarns and distributed throughout the fabric in a manner sufficiently regular to prevent corrugation when the fabric is laundered by techniques involving high centrifugal and tumbling forces".

Although the reverse twist was changed by the inventors in the claims of the original patent of October 30, 1953, as shown above, no change was made then or later in the language of the specification in this respect. The reasons which led to this action, as we shall see, have an important bearing on the validity of the patent.

So the matter stood until January 26, 1956, when the application for the reissue was filed. Therein the term *cross* was omitted from the description of the weave of the cross woven fabric in the specification and the fabric was limited to a diaper fabric instead of a fabric in general; and a new claim was added which limited the structure to a particular kind of diaper fabric, to wit: a gauze diaper fabric. These limitations were inserted to meet the contention that the broader claims were lacking in novelty. The specification of the reissue, however, made no change in the description of the *regular* reverse twist contained in the specification of the original patent. The description of the *random* reverse twist contained in the single claim of the original patent was retained in both claims of the reissue, which are as follows:

"1. An unstiffened low-count woven diaper fabric having all of its yarns possessing a twist multiplier no greater than 4.75 and wherein the shrinkage forces released on wetting are dissipated by local compensating disturbances and not transmitted throughout the entire fabric, said fabric having 25 to 50 per cent of its warp yarns possessing a twist reverse from that of the remainder of the warp yarns and distributed throughout the fabric in a manner sufficiently regular to prevent corrugation when the fabric is laundered by techniques involving high centrifugal and tumbling forces.

"2. In a gauze diaper comprising a plurality of plies of fabric, the improvement according to which said fabric is an unstiffened low-count woven diaper fabric having all of its yarns possessing a twist multiplier no greater than 4.75 and wherein the shrinkage forces released on wetting are dissipated by local compensating disturbances and not transmitted throughout the entire fabric, said fabric having 25 to 50 per cent of its warp yarns possessing a twist reverse from that of the remainder of the warp yarns and distributed throughout the fabric in a manner sufficiently regular to prevent corrugation when the fabric is laundered by techniques involving high centrifugal and tumbling forces."

The defense of invalidity upon which the defendant relies in this case is based mainly on the timing of the change in the language of the claims describing the manufacturing process whereby the

regular use of the reverse twist *in every one to four of the warp yarns* was abandoned and in place thereof was substituted the reverse twist throughout the fabric *in a manner sufficiently regular to prevent corrugation*. The change was made for practical business reasons. Shortly after the discovery that the use of the reverse twist in regular distribution eliminated objectionable corrugations in diaper fabric, it was found to be too expensive to count the threads or ends and arrange them in alternate S and Z twists or to use the reverse twist in every one to four warp yarns. Further experimentation in the plaintiff's plant showed that strict regularity was unnecessary and that satisfactory results could be obtained by the random distribution which finally appeared in the claims of both the original and the reissue patent. Accordingly, the goods which Chicopee put on the market and sold in 1951 and the early part of 1952, two years before the original patent was issued, were made under the random process. Kendall also used the same process in the diaper material which it manufactured and sold after it had obtained and copied the material made by its competitor. This was first done by Kendall before the original patent was issued and without knowledge that the patent had been applied for and was pending. But Kendall continued to manufacture the fabric in the manner described in the claims of the patent after the patent was issued.

The defendant's position is that it was free to copy the material used in the plaintiff's goods because it was manufactured and sold to the public more than a year before the altered claim of the original patent was filed and, therefore, the case falls within the terms of the patent statute, 35 U.S.C.A. § 102(b), which provides that a person shall not be entitled to a patent if the invention was in public use or on sale in this country more than one year prior to the date of the application for the patent in the United States. See Muncie Gear Co. v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

In our opinion the claims of the reissue patent in suit are invalid for the reasons stated. The regular procedure set forth in the original claims of the original patent was abandoned when it was found that the methods described therein were commercially impracticable and in place thereof a broader procedure was prescribed. The use of the reverse twist in 25 to 50 per cent of the warp yarns described in the claims of the patent as issued obviously includes the use of the reverse twist in every one to four of the yarns, but it does not require this procedure. On the contrary it prescribes an irregular distribution of the twists so long as they fall within the limits of 25 to 50 per cent. The irregular arrangement was found to be both effective and economical but unfortunately it was made available for public use by the public sale of the goods more than a year before it appeared in a claim in the Patent Office and thereby the monopoly of the patent was destroyed.

The plaintiff seeks to avoid this result on the ground that the claims in suit fall within the scope of the original specification, which in this respect remained unchanged. The contention is that the use of the reverse twist "in one out of every two to four warp yarns in the fabric" is the same as the use of a "fabric having 25 to 50 per cent of its warp yarns possessing a twist reverse from that of the remainder of the warp yarns" distributed throughout the fabric in a manner sufficiently regular to prevent corrugation. Comparison of the two phrases demonstrates the weakness of the contention, for it is obvious that strict regularity which produces the desired end is not the same as sufficient regularity to obtain the same objective, especially as it is known that the latter method is practicable but the former is not.

If there should be any doubt in the matter it is laid to rest by the plaintiff's actions during the prosecution of the application for the patent in the Patent Of-

fice, as described in correspondence between members of its patent department. The record on appeal contains a confidential inter-office communication of June 21, 1955, from Charles A. Harris, the plaintiff's patent attorney, and one of the attorneys on this appeal, to Dr. B. A. Bull, the director of the plaintiff's patent department. The communication contains an analysis of the prior art bearing on the discovery and the desirability of narrowing the claim of the original patent and restricting the fabric to diaper cloth in the reissue patent. Under the caption "Breadth of Claim and Public Use" the writer refers to the fact that, during the pendency of the original patent in the Patent Office, the diaper fabric sold by Chicopee was outside the scope of the specifications and the claims of the original patent as then being prosecuted, and then adds that "since public sale barred the addition of new matter we were forced to broaden the claims without adding to the specification". There could hardly be a clearer description of an attempt, condemned in Muncie Gear Co. v. Outboard Marine & Mfg. Co., supra, to broaden a claim to include matter not described in the specification which had become public property through public sale.

No reference is made to this communication in the findings of fact prepared by the plaintiff's attorney for the District Judge.

There is some conflict in the testimony of the expert witnesses on this point. Those for the defendant are in agreement with the opinion expressed by the plaintiff's patent attorney, as outlined above, that the language of the claim of the original patent when issued and of the claims of the reissue patent with respect to the use of the random twist does not have the same meaning as the language describing the regular twist in the original claims in the application for the original patent when it was first filed. In other words, they are in agreement with the view expressed by the plaintiff's attorney, before the present controversy arose, that the new claims are broader than the old and describe a fabric that was put on the market by Chicopee more than two years before the new claims were offered. The plaintiff's expert witnesses are not so clear. Their attempt is not so much to show that the two descriptions are essentially synonymous as it is to demonstrate that the defendant actually embodied a reverse twist in every two to four yarns of the goods which it put on the market. Their testimony, however, is not convincing. Their exhibits of the defendant's goods showed that some portions of the material approximated in structure the regular arrangement of the twist described in the specification, but on the whole the structure of the goods in this respect was haphazard and irregular as described in the claims of the reissue. We find nothing to overcome the ante litem conclusion of the plaintiff's own attorney that the phrases are different in meaning and that the structure described in the specification and in the original claims was devoid of practical utility.

The manner in which the opinion of the District Judge was prepared in this case cannot be approved. There is authority for the submission to the court of proposed findings of fact and conclusions of law by the attorneys for the opposing parties in a case, and the adoption of such of the proposed findings and conclusions as the judge may find to be proper. See United States v. Crescent Amusement Co., 323 U.S. 173, 184, 65 S.Ct. 254, 89 L.Ed. 160; Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587, 589; Schilling v. Schweitzer-Cummings Co., 79 U.S.App.D.C. 20, 142 F.2d 82, 83; Simons v. Davidson Black Co., 9 Cir., 106 F.2d 518; O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, 667. In South Carolina, we are told, under a practice that prevails widely in the trial courts of the state, the opinion is frequently prepared at the request of the judge by the attorney for the successful party. But there is no authority in the federal courts that countenances the preparation of the opinion by the attorney for either side. That practice involves the failure

of the trial judge to perform his judicial function and when it occurs without notice to the opposing side, as in this case, it amounts to a denial of due process. In either event, a reversal of the judgment and a remand for further proceedings would be justified. In the pending case, however, the invalidity of the patent has been so clearly shown that the judgment will be reversed with directions to the District Judge to dismiss the bill of complaint.

Reversed and remanded.