Phyllis A. ANDERSON, Appellee,

v.

CITY OF BESSEMER CITY, NORTH CAROLINA, Appellant.

No. 83–1278.

United States Court of Appeals, Fourth Circuit.

Argued July 22, 1983.

Decided Sept. 19, 1983.

Rehearing and Rehearing En Banc Denied Nov. 4, 1983.

---

Philip M. Van Hoy, Mullins & Van Hoy, Charlotte, N.C., Arthur C. Blue, III, Whitesides, Robinson & Blue, Gastonia, N.C., on brief), for appellant.

Jonathan Wallas, John T. Nockleby, Charlotte, N.C. (Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

Phyllis A. Anderson filed this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Anderson alleged that defendant, City of Bessemer City, North Carolina (the City), discriminated against her on the basis of sex when it failed to hire her as its Recreation Director. Following a bench trial, the district court, 557 F.Supp. 412, entered judgment in favor of Anderson and ordered back pay and costs, including attorney's fees. From this judgment, the City appeals. We reverse.

### I.

In the spring of 1975, the City began seeking applicants for the position of Recreation Director. A committee of five persons was appointed by the mayor to make the selection. The mayor appointed Leona (Auddie) Boone, the selection committee's only female member, to be its chairperson. The record reveals that no specific prehiring guidelines for the position had been established.[1]

Eight persons applied for the job and submitted their resumes, including Anderson, who was the only female applicant. All eight applicants were interviewed by the selection committee on the same day. Following the interviews, the committee

---

1. A letter from William E. Metcalf, City Manager, sent to the successful applicant, Donald Kincaid, after he was hired, describes the duties of the position of Recreation Director as follows:

   The duties of the recreation director of Bessemer City will endeavor [sic] to develop a well rounded recreation program for the use and benefit of the citizens of Bessemer City. His duties are expected to encompass and include, but not limited [sic] to, the following:

   1) To manage all recreation facilities in the City of Bessemer City.

   2) To develop recreation programs to serve the needs of all age groups and both sexes.

   3) Organize a program of competitive sports in a comprehensive program.

   4) Manage the Bessemer City Community Centers.

   5) Direct the operations of the swimming facilities.

   6) Develop facilities and planning and proposed methods of financing the plans for improvement in addition to the city recreation facilities.

   7) Perform other related duties as may be assigned by the City Manager.

   8) The Recreation Director is under direct supervision and control of the City Manager and is expected to work together with, and receive advise [sic] from the Bessemer City recreation committee.

   9) The Recreation Director is hereby delegated the authority to hire and fire all employees in the recreation department.

members determined that only three of the applicants were qualified for the job. They were Bert Broadway, Donald Kincaid, and Anderson.

For the two years immediately preceding his application, Broadway, who was a licensed recreator, had been the Recreation Director for Cramerton, North Carolina, a town located in the same county as Bessemer City. Broadway was not a college graduate, although he had taken college-level classes, including five electives in physical education. Because of his experience, Broadway was the first choice of all the committee members, including Boone, the only female member. During his interview, however, Broadway had indicated that he was unwilling to move to Bessemer City to accept the job. For that reason, the committee members eliminated him from further consideration and proceeded to decide between Kincaid and Anderson. Four members voted in favor of Kincaid because, as they testified at trial, they believed he had a superior educational background. Boone was the only member to vote for Anderson. Kincaid was hired for the position.

When he applied for the job, Kincaid was twenty-four years old. A year earlier he had received a Bachelor of Science degree in health and physical education. In connection with his college experience, Kincaid had listed on his resume the following "method and activity courses": basketball, football, baseball, volleyball, track, soccer, swimming, tennis, skiing, badminton, and golf. He also indicated that he had participated in college intramural sports. Included as other interests on Kincaid's resume were coaching, reading, and music.

At trial, Kincaid testified that as part of his college training, he had taken courses in how to teach and evaluate sports and physical education. He also testified that his course work included organizing and administering physical education programs, with an emphasis on planning and developing facilities, budgeting, purchasing, maintenance, and insurance. Finally, Kincaid

stated that he had taken courses in first-aid and public speaking. Kincaid had played various sports as a high school student in Bessemer City and had served as a little league sports coach before applying for the job with the City.

Kincaid had been a student teacher of physical education at a high school in Tennessee during 1973–1974 and in 1974 received his teacher's certification after passing a national examination. When he applied for the position of City Recreation Director, he was employed in the finance department of a credit company, where he had some experience in dealing with the public.

At the time of her interview, Anderson was thirty-nine years old. In 1973, she received a Bachelor of Arts degree in elementary education. She had also taken additional courses, including a Dale Carnegie course and a class in decoupage.

Around 1956–1957, Anderson had worked approximately one year at a North Carolina state mental hospital, where she had instructed patients in recreational activities, including sports, dancing, and singing. In connection with this position, Anderson had obtained a state certificate as a Recreation Director. Although her duties at the hospital may have included some supervision of employees, she had no authority to hire, fire, or discipline them. Anderson's job experience also included being a receptionist in a doctor's office in 1959 and working as a parttime department store clerk in the early 1960's. Before applying for the job of Recreation Director, Anderson had been a substitute elementary school teacher for about ten years and had taught a third grade class in 1973–1974.

At trial Anderson testified that her duties as an elementary school teacher included being responsible for physical education and organizing and supervising children's games. She testified that she attended sports events in which her two sons participated and that she had played soft-

ball and basketball.[2] Anderson had also participated in various civic activities, which involved fund raising and public speaking. Her resume further indicated that she played the piano and had been a music director.

There was conflicting testimony at trial with respect to whether all of the candidates had been questioned about their amenability to travelling and working at night and about their spouses' reactions to these aspects of the job. Anderson claimed that one of the male selection committee members had posed a single question to her on these subjects, but she could not identify which committee member it had been. Boone, the committee's chairperson and only female member, testified that she did not recall other candidates being asked such questions. Boone admitted, however, that she had commented to Kincaid, "and your new bride won't mind." Another committee member testified that the inquiry about night work was asked of all applicants. According to the testimony of a third committee member, both Kincaid and Anderson had been questioned about their willingness to work at night. Kincaid testified that, although he could not pinpoint the question, he recalled communicating to the committee his understanding that the job would require after-hours work.

When the committee failed to hire her for the position, Anderson filed a charge of sex discrimination with the Equal Employment Opportunity Commission and, after receiving notice of her right to sue, brought this Title VII action. The City defended on the ground that Kincaid was hired because of his superior educational credentials. After hearing the evidence, the district court issued a Memorandum of Decision, concluding that the City's reason for hiring Kincaid was pretextual and that Anderson had been denied the job because of her sex. The district court then directed plaintiff's counsel to submit proposed findings of fact, conclusions of law, and an appropriate judgment. The City filed a motion, objecting to the delegation of this function to plaintiff and requesting the trial judge to write his own opinion. This motion was denied, but the City was invited to and did in fact respond to plaintiff's findings and conclusions after they were filed. The substance of plaintiff's submission was adopted by the trial court as the final opinion in the case.

In this opinion, the trial judge concluded that the male committee members were biased toward selecting a male, particularly one who was versed in traditionally male-dominated sports. Furthermore, in reaching his conclusion that Anderson had been discriminated against because of her sex, the trial judge specifically found that Anderson was "more qualified than Kincaid to perform the broad range of duties required of a recreation director." He further found that Anderson was the only candidate who had been asked any "serious question about night work or reaction of spouses".

## II.

On appeal, the City contends that these two critical findings of the trial court were clearly erroneous and require a reversal of the judgment in favor of Anderson. The City also challenges the trial court's conclusion that the City's refusal to hire Anderson was based on gender stereotypes and sexual bias. Finally, the City argues that the trial court unlawfully delegated to plaintiff's counsel the judicial function of writing the opinion in this case. We agree with each of these contentions.

As we recently stated in *Lewis v. Central Piedmont Community College*, 689 F.2d 1207, 1209 (4th Cir.1982):

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the basic allocation of burdens and order of presentation of proof in cases alleging discriminatory treatment. [Footnote omitted] First, the plaintiff has the burden of establishing a prima facie case of

2. At oral argument, Anderson's counsel stated that her experience playing basketball occurred in the mid-1950's.

discrimination. Then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for rejecting the plaintiff. The burden of *proving* discrimination, however, remains with the plaintiff and, therefore, if the employer presents legitimate reasons for plaintiff's rejection, it is the plaintiff's burden to prove that those reasons were actually a pretext for discrimination.

In order to establish a prima facie case, "[t]he plaintiff must prove by a preponderance of the evidence that she applied for the available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

That Anderson met her initial burden of establishing a prima facie case of discrimination is not seriously contested. Any inference of discriminatory intent, however, was dispelled by the City's clear explanation that Kincaid had better qualifications for the job. Our review, therefore, is focused on whether or not Anderson met her remaining burden of showing that the City's articulated nondiscriminatory reason for selecting Kincaid was in fact pretextual, as the district court found. As stated previously, the district court's conclusion that Anderson had been the victim of intentional discrimination depended in large part on its findings that Anderson was both better qualified than Kincaid and also had been subjected to disparate selection treatment.

### III.

Directing our attention first to the matter of qualifications, we note that it is not enough for Anderson to show that she was just as qualified as Kincaid to perform the job. Her burden is to establish that she was *better* qualified than the successful applicant. *EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 672 (4th Cir.1983). The record in this case simply fails to support the district court's finding that between the two candidates, Anderson had the superior credentials.

Although the selection committee had not established prehiring guidelines for the Recreation Director's position, it is clear that athletics was a significant and legitimate concern of all the committee members, both male and female. This is obvious from the fact that Broadway was considered the most qualified of the three candidates by all selection committee members, including Boone. Broadway's resume, which was admitted into evidence, emphasizes his background and formal training in athletics, equipment, and games, including football, baseball, and basketball. Thus, although the position also involved other aspects of recreation, the entire committee perceived knowledge of athletics and sports to be an important and integral part of the Recreation Director's responsibilities.

Moreover, there is simply nothing in the record to support Anderson's claim that the selection committee manipulated the requirements of the job to favor Kincaid over Anderson. Contrary to Anderson's assertion, the four male committee members were not inconsistent in ranking Kincaid as their second choice, because of his college degree, when their first choice, Broadway, was not a college graduate. Of the three applicants considered to be qualified for the job, Broadway, who was already a recreation director in another city, clearly had the most current and directly relevant job-related experience, which the committee was seeking, despite the fact that he had no college degree. Similarly, it is clear that Kincaid, who was a recent college graduate, holding a degree in a specific academic discipline related to recreation, had the most directly relevant education, despite his lack of extensive work experience. Anderson, on the other hand, had neither the current job-related experience of Broadway, nor the current job-related education of Kincaid. Anderson held merely a college degree in an unrelated field, elementary education, and had practical experience which, with one

exception, was only indirectly related to recreation.[3]

Unlike Kincaid, Anderson's own participation in sports was primarily limited to her basketball experience some twenty years previously. This experience, even when considered in conjunction with her exposure to team sports as a mother of two sons and as an elementary school teacher, is simply not comparable to Kincaid's personal involvement and formal training in athletics. Neither candidate had specific experience in budgeting or in employee supervision. Anderson's budgetary experience was limited to collecting money for school lunches and trips and her supervisory experience, if any, at her state hospital job was too remote in time to merit serious consideration.

There is no question that Anderson was qualified for the job. Nevertheless, the evidence shows that Kincaid's overall training was superior to Anderson's training and experience for the demands of this job.[4] Even among equally qualified candidates, an employer has discretion to choose the person he prefers. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability...." *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1097. In finding Anderson better qualified than Kincaid, the district court impermissibly substituted its own judgment for that of the selection committee. Because, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), the district court's finding that Anderson was better qualified than Kincaid is clearly erroneous. Fed.R.Civ.P. 52(a).

## IV.

We next consider the district court's finding that Anderson was the only applicant seriously questioned about night work, travel, and her family's reaction to these job requirements. This finding was based in substantial part on Boone's testimony, including the following excerpt from the City's cross-examination of Boone:

Q You testified about the famous question about the family's reaction to the job. Who on the committee asked Ms. Anderson that question?

A I don't recall.

Q So, like Ms. Anderson, you know it was asked but you don't remember who asked it?

A It was either Tim Helms—Tim, I'm not going to put you on the spot. Let me say I don't recall. I'm not going to say because it would be just like picking a name out of a hat.

Q Do you deny that the other applicants, aside from the plaintiff, were asked about the prospect of working at night in that position?

A Not to my knowledge.

Q Are you saying they were not asked that?

A No. I think Mr. Kincaid would be fine.
Q You do not believe in that sense Ms. Anderson's qualifications were superior?
A No, indeed.
Q How about art, do you believe either one of them had qualifications superior to the other? ... As to the subject of art specifically?
A No.
Q As to the subject of dramatics?
A No, a rounded program, sir.
Q As to the subject of public speaking, specifically?
A No, sir.
Q As to the subject of team sports, specifically?
A No.

3. The exception was the job Anderson had for one year at a state hospital around 1957, in connection with which she had obtained her license as a recreator. These events, however, occurred some eighteen years before Anderson applied for the position with the City and hardly overcome Kincaid's recent job-related training to make her *better* qualified for the position than Kincaid.

4. When asked about particular, individual comparisons in qualifications between Anderson and Kincaid, even Boone specifically denied that Anderson was better qualified:
Q Did you personally conclude that the plaintiff, Ms. Anderson, would be better qualified than Mr. Kincaid to institute a dance program?

A  They were not asked, not in the context that they were asked of Phyllis. I don't know whether they were worried because Jim wasn't going to get his supper or what. You know, that goes both ways.

Q  Did you tell Phyllis Anderson that Donnie Kincaid was not asked about night work?

A  He wasn't asked about night work.

Q  That answers one question. Now, let's answer the other one. Did you tell Phyllis Anderson that, that Donnie Kincaid was not asked about night work?

A  Yes, after the interviews—I think the next day or sometime, and I know—may I answer something?

Q  If it's a question that has been asked; otherwise, no. It's up to the Judge to say.

A  You asked if there was any question about—I think Donnie was just married, and I think I made the comment to him personally—and your new bride won't mind.

Q  So, you asked him yourself about his own wife's reaction?

A  No, no.

Q  That is what you just said.

The evidence in this case, even including Boone's testimony, amply demonstrates that a substantially similar question concerning after-hours work and family reaction was posed both to Anderson and Kincaid, if not to all candidates. Nor are we convinced by the district court's characterization of Boone's remark to Kincaid, "and your new bride won't mind," as facetious and asked merely out of annoyance or frustration. The record does not indicate the sequence of the interviews and thus fails to provide the requisite support for this theory, which presumes that the six unsuccessful male candidates were interviewed first, followed by Anderson, and then Kincaid. Moreover, the record clearly demonstrates that night work and travel were anticipated functions of the position. Thus, any questions on these subjects to any of the candidates were certainly job-related.

The district court's finding that Anderson was the only candidate seriously questioned about these matters represents another instance in which the trial court impermissibly interjected its own judgment into the case. The finding is without evidence to support it and is, therefore, clearly erroneous. Fed.R.Civ.P. 52(a).

## V.

Next, we address the district court's conclusion that the male committee members were biased in favor of hiring a male and that the City's "decision not to hire the more qualified applicant [i.e. Anderson] for Recreation Director is based on such stereotyped impressions of the sexes as indicated in the questions asked the plaintiff during the interview and the testimony of the male committee members at trial." We have already determined that the district court's findings with respect to Anderson's qualifications and her treatment in the selection process were clearly erroneous. Without these critical findings, the remaining evidence relied on by the district court is simply insufficient to support the district court's conclusion that the male committee members were biased.[5]

The district court placed special emphasis on the fact that the City's hiring decision was made on the basis of subjective, unarticulated criteria. The use of subjective criteria to hire employees is not, however, illegal *per se*. As the Supreme Court pointed out in *McDonnell Douglas v. Green,* 411

---

5. The district court concluded that bias was inferred from the failure of one of the male committee members to solicit applications from two female school teachers he knew and from remarks made by another committee member that it would be "real hard," in his opinion, for a woman to serve as Recreation Director. This evidence, however, is inadequate to support a finding of bias, and is dispelled by other portions of the record. For example, there is nothing to show the male committee members had a bias against working women. All four testified that their wives had worked and were accustomed to being away from home during evening hours. The wife of one committee member had worked a night shift for ten years and the wife of another had performed night work as a Registered Nurse.

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facie case." *Page v. Bolger,* 645 F.2d 227, 230 (4th Cir.1981). We have previously discussed the legitimate importance which all the committee members attributed to athletics and team sports in the Recreation Director's role (see Part III of this opinion). Suffice it to say that our review of the entire record leads us to conclude that Anderson failed to carry her burden of demonstrating sex-based bias on the part of the male committee members. Likewise, given this record, she failed to fulfill her overall burden of proving intentional discrimination because of sex. Thus, the district court's judgment in her favor must be reversed.

### VI.

Our close scrutiny of the record in this case is justified by the manner in which the opinion was prepared. In this regard, we remind the district court of our recent admonitions, condemning the practice of adopting the prevailing party's proposed findings of fact and conclusions of law. *See, e.g., Cuthbertson v. Biggers Bros., Inc.,* 702 F.2d 454, 458–59; 465–66 (4th Cir.1983); *EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 640–41 (4th Cir.1983); *Holsey v. Armour & Co.,* 683 F.2d 864 (4th Cir.1982).

In *Chicopee Manufacturing Corp. v. Kendall Company,* 288 F.2d 719 (4th Cir.1961), we recognized that:

> [t]here is authority for the submission to the court of proposed findings of fact and conclusions of law by the attorneys for the opposing parties in a case, and the adoption of such of the proposed findings and conclusions as the judge may find to be proper... But there is no authority in the federal courts that countenances the preparation of the opinion by the attorney for either side. That practice involves the failure of the trial judge to perform his judicial function....

*Id.* at 724–25. In *Chicopee,* we specifically held that such a practice justified reversal of the judgment and a remand for further proceedings. *See also, Cuthbertson,* 702 F.2d at 465.

Anderson contends that the procedure employed in this case was appropriate because defendant's counsel had an opportunity to respond to plaintiff's proposed findings and conclusions, and because the trial judge made some changes in plaintiff's submission. We disagree. Although in this case the district court did not adopt verbatim Anderson's proposed findings and conclusions, it did adopt the substance of her submission, with certain rewording and additions. Furthermore, the trial judge had already issued his Memorandum of Decision in favor of plaintiff when he directed plaintiff's counsel to submit proposed findings and then permitted defendant's counsel to respond. This procedure is substantially different from requesting attorneys on opposite sides to submit proposed findings and conclusions before a judgment is rendered. We, therefore, conclude that the method employed by the trial judge in preparing his opinion in this case continues to violate the intent of our earlier decisions, including *Chicopee,* and cannot be sanctioned.

### VII.

For the foregoing reasons, the judgment entered by the district court in favor of Anderson is hereby reversed.

REVERSED.