Haziel ATERE–ROBERTS, Plaintiff,

v.

JELD–WEN, INC., an Oregon Corporation, Defendant.

No. 3:97CV386–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Nov. 5, 1998.

Martha Efird, Charlotte, NC, for plaintiff.

William Sturges, Charlotte, NC, for defendant.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment [document no. 9, filed 24 August 1998]. Defendant moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment against Plaintiff on the grounds that there exist no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. For the reasons set forth below, the Court will grant Defendant's motion.

### I. Factual Background and Procedural History

Plaintiff contends that he was denied a promotion to management by Defendant because of his race and national origin in viola-tion of Title VII of the Civil Rights Act of 1964 and in violation of 42 U.S.C. § 1981. Plaintiff is a 43–year–old black male who emigrated from Sierra–Leone and became a United States citizen in 1992. (Pl.'s Resp. at 2.) Defendant is an Oregon corporation with several plants involved in the manufacture of millwork products, primarily windows and doors for residential construction. (*Id.*) Plaintiff was employed as an assembler at Defendant's facility in Charlotte, North Carolina, from June 1989 to December 1997. (*Id.* at 2, 5.)

At Defendant's Charlotte facility, the personnel hierarchy consists of a general manager who oversees an office manager, a production manager, and approximately eight production supervisors. (Westcott Dep.Tr. at 16–17, 53.) The remaining employees are hourly workers or office personnel. (*Id.* at 17.) The general manager decides how many supervisors are needed and when to hire them, though the decision to promote an employee is made jointly by the general manager and a divisional vice president, along with the input of the president. (Westcott 1st Aff. ¶ 4.) At all times relevant to this action, Tom Westcott served as the general manager of Defendant's Charlotte facility, Joe Chiaretti served as the divisional vice president, and Rod Wendt served as president. (*Id.*) While Westcott works in Charlotte, Chiaretti's office is in Ringtown, Pennsylvania, and Wendt is located in Klamath Falls, Oregon. (*Id.*)

Plaintiff first expressed interest in a management position in a letter dated 29 March 1996. (Pl.'s Resp., Ex. 6.) The letter, addressed to "General Manager," stated that he desired to be promoted to "the next available job in management, namely, supervisory, position." (*Id.*) At the time of the letter, Westcott was not seeking additional supervisors, and no promotions to supervisor had occurred during the previous ten months. (Westcott Dep.Tr. at 68–69; Westcott 1st Aff. ¶ 12.) On 19 April 1996, Plaintiff sent a second letter addressed to "General Manager," in which he again expressed interest in a promotion and stated, "I will presume that I will be considered for the next supervisory position." (Pl.'s Resp., Ex. 6.)

In early August 1996, Westcott determined that there was a need for an additional supervisor, so he assembled a pool of five candidates—Plaintiff, Terry Petrill, Paul Long, Joseph Lower, and Joel Surratt—based upon inquiries and recommendations. (Westcott Dep .Tr. at 69.) Plaintiff was the only black candidate. (Def.'s Reply at 6.) Westcott requested that each candidate complete an application for employment and personal history record and also take two standardized tests, the Stevens & Thurow Test and the Prevue Assessment Test. (Westcott 1st Aff. 6.) The candidates completed the process in late August or early September 1996. (Def.'s Mem.Supp.Summ.J. at 4.)

The standardized tests have been used by Defendant since the 1960s and are designed to be non-biased. (*Id.;* Reskin Aff. ¶¶ 3, 12.) The tests are purchased from the creators and are scored in accordance with the testing companies' instructions, with the highest score being the best score. (Reskin Aff. ¶ 3.) The Prevue Assessment Test involves a test taker's knowledge and mental abilities and requires a controlled environment and a time limit when it is administered. (*Id.* ¶ 5.) The Stevens & Thurow Test involves the test takers' beliefs and anticipated responses to hypothetical questions. (*Id.* ¶ 4.) No time limit or controlled environment is required for this test because the questions are not the type that can be researched. (*Id.*)

Each candidate took the Prevue Assessment Test at the Charlotte facility under the same conditions. (Westcott 1st Aff. ¶ 15.) Defendant claims that this is the most significant test concerning possible promotion to management. (Chiaretti Aff. ¶ 8.) With regard to the Stevens & Thurow Test, Plaintiff took the test at the Charlotte facility, whereas at least two of the candidates were permitted to take the test home because of prior commitments. (Westcott 1st Aff. ¶ 15.) Upon completion, Westcott forwarded the tests to Defendant's Training and Education Department in Klamath Falls, Oregon, for scoring. (Reskin Aff. ¶¶ 6–7.) The results were as follows:

| Candidate | Prevue Assessment Score | Stevens & Thurow Score [ (Part I, Part II) Total] |
|---|---|---|
| Plaintiff | 87 | (15, 10) 11 |
| Petrill | 92 | (50, 19) 29 |
| Long | 92 | (33, 64) 41 |
| Lower | 87 | (69, 24) 38 |
| Surratt | 76 | (84, 38) 52 |

(Def.'s Mem.Supp.Summ.J. at 4–5; Westcott 1st Aff., Exs. A–E.)

In addition to these test results, Westcott reviewed the candidates' personnel files and applications for employment and personal history records and also talked to the candidates and their supervisors. (Westcott 1st Aff. ¶¶ 6–8.) Chiaretti and Wendt, independent of and prior to discussing the candidates' qualifications with Westcott, also reviewed the applicants' test scores and applications. (Chiaretti Aff. ¶ 7.) Chiaretti and Wendt, unlike Westcott, did not know the race of any of the candidates. (*Id.*) Based on their evaluations, Chiaretti and Wendt decided that only candidates Petrill and Long should be considered for a management position. (*Id.* ¶ 8.)

In mid-September 1996, Westcott and Chiaretti discussed the promotion decision, and Westcott concurred that Petrill and Long were the best candidates; however, they concluded that Long did not have sufficient formal education. (*Id.* ¶¶ 9–10.) They agreed that Long should not be offered an immediate position but, if he were to obtain further formal education, he could be considered in the future. (*Id.* ¶ 10.) Consequently, Westcott and Chiaretti made the joint decision to offer the supervisor position only to Petrill. (*Id.*)

Notably, Petrill's scores on the Prevue Assessment Test and the Stevens & Thurow Test were significantly higher than Plaintiff's. In addition, Plaintiff had four written warnings in his file related to tardiness and

attendance, whereas Petrill had no disciplinary warnings. (Westcott 1st Aff. ¶¶ 7.) While Plaintiff maintains that he had a good work record, (Pl.'s Resp. at 3, Ex. 3), Westcott gave Petrill a higher assessment as a potential manager. (Westcott 1st Aff. ¶¶ 6–9.)

Westcott met with each candidate and advised them of the company's decision. (*Id.* ¶ 11.) Westcott told Plaintiff that he was not selected because his test scores were lower than Petrill's. (Pl.'s Resp. at 12.) Plaintiff claims that no other explanation was given. (*Id.* at 13.) Long eventually was promoted in June 1997. (Westcott 1st Aff. ¶ 20.) None of the other candidates considered in August 1996 were ever promoted or considered for promotion. (Def.'s Reply at 6.)

On 27 January 1997, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed Plaintiff's complaint as without merit on 11 April 1997. Plaintiff then filed a Complaint in this Court on 10 July 1997. Defendant filed its Answer on 17 September 1997. Upon completion of discovery, Defendant filed the current Motion for Summary Judgment.

## II. Discussion and Analysis

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Rule 56, the moving party is not required to produce · evidence negating an opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Because one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, the moving party on a summary judgment motion need not produce evidence but simply can argue that there is an absence of evidence by which the nonmovant can prove his case. *Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994).

Once a defendant makes a properly supported motion for summary judgment, the burden shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995). This burden is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995).

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* at 252, 106 S.Ct. 2505. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Id.*

As with any summary judgment motion, a court must draw any permissible inference from the underlying facts established in the record in the light most favorable to the nonmoving party. *Austin v. Clark Equip. Co.,* 48 F.3d 833, 835 (4th Cir.1995). Still, in order for an inference to be permissible, it must be reasonable. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sylvia,* 48 F.3d at 818. Reasonableness must be considered in light of the competing inferences to the contrary. *Sylvia,* 48 F.3d at 818.

### B. Plaintiff's Claims

In race discrimination cases involving allegations of disparate treatment, a shifting burden of proof scheme applies. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Autry v. North Carolina Dep't of Human Resources,* 820 F.2d 1384, 1385 (4th

Cir.1987). A claim of disparate treatment in employment is analyzed in the same manner regardless of whether the claim is brought under Title VII or section 1981. *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989). In order to establish a prima facie case of discriminatory failure to promote, a plaintiff must prove (1) that he is a member of a protected class, (2) that his employer had an open position for which he applied or sought to apply, (3) that he was qualified for the position, and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959–60 (4th Cir.1996). More is required than a showing that a plaintiff is a member of a protected group and was adversely treated. *Autry,* 820 F.2d at 1386. Establishing a prima facie case requires a plaintiff to show an evidentiary connection between the plaintiff's race and the adverse employment decision. *Id.* at 1385–86 (citing *Holmes v. Bevilacqua,* 794 F.2d 142, 147 (4th Cir.1986)).

■ Once a plaintiff establishes his prima facie case, the burden of production shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510 n. 3, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the employer comes forward with a legitimate, nondiscriminatory reason to explain its action, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext and that the action was actually taken on account of the plaintiff's race. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 248, 101 S.Ct. 1089; *Spencer v. General Elec. Co.,* 894 F.2d 651, 659 (4th Cir.1990).

■ In a pretext case, a defendant can obtain summary judgment in one of two ways. The defendant can demonstrate that the plaintiff's proffered evidence fails to establish a prima facie case, or, if a prima facie case is established, the defendant can present evidence that provides a legitimate, non-

discriminatory explanation about which the plaintiff does not create a factual dispute. *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993).

In the case at bar, the first two prongs under *Evans* are easily satisfied. Plaintiff, a black male originally from West Africa, is a member of a protected class, and he applied for an open position. As to the third prong, the parties dispute whether Plaintiff was qualified for this position. Given that the underlying facts must be construed in the light most favorable to Plaintiff and given that the United States Supreme Court has stated that "the burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, the Court will accept as true for the purposes of summary judgment Plaintiff's claim that he was qualified for the position.

As regards the fourth prong, the parties also dispute whether race was a factor in the decision to deny Plaintiff a promotion. Plaintiff puts forth a couple allegations to support his argument of racial bias. First, Plaintiff claims that one of his former supervisors, Chuck Blume, once told him, while visiting the restroom, "Get your black ass out here." (Pl.'s Dep.Tr. at 49.) Blume denies ever making such a remark. (Blume. Aff. ¶¶ 3–5.) Regardless, according to Plaintiff, the remark was made at least three years prior to Plaintiff's request for promotion. This stray remark does not constitute evidence of disparate treatment, especially given that Blume was never involved in the decision to deny Plaintiff a promotion. *See Bodoy v. North Arundel Hosp.,* 945 F.Supp. 890, 895 (D.Md.1996) *aff'd,* 112 F.3d 508, 1997 WL 211228 (4th Cir.1997) (granting summary judgment for defendant employer because no discriminatory intent is established by "stray remarks and isolated statements by those unconnected to the final decision-making process"); *see also EEOC v. Clay Printing Co.,* 955 F.2d 936, 941 (4th Cir.1992) (affirming summary judgment for similar reasons).

Plaintiff also claims that, after he was rejected for an open warehouse job in 1997, another supervisor, Scott Melton, told him, "I wish they would come forward and say the truth to you, Haziel." (Pl.'s Dep.Tr. at 62.)

Plaintiff interpreted this to mean that he did not get the job because of his race. (*Id.*) Melton denies making any such comment. (Melton Aff. ¶¶ 4–8.) Regardless, according to Plaintiff, this remark was not made not in relation to the supervisor promotion at issue. In sum, Plaintiff's evidentiary support to show that race was a factor in his failure to be promoted is rather thin.

The Court has serious doubts as to whether the underlying facts provide a *reasonable* inference of unlawful discrimination. Nevertheless, the Fourth Circuit has characterized the burden of establishing a prima facie case of unlawful discrimination as a "relatively easy test." *Young v. Lehman,* 748 F.2d 194, 197 (4th Cir.), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 489 (1985). Therefore, the Court will turn to the issue of whether Defendant articulated legitimate, nondiscriminatory reasons for not promoting Plaintiff. Defendant offered the following reasons:

(1) Plaintiff's Prevue Assessment Test score was 87; the successful candidate scored a 92.

(2) Plaintiff's Stevens & Thurow Test score was 11, the lowest of the five candidates; the other candidates scored between 29 and 52.

(3) Plaintiff's personnel file contained four disciplinary warnings for tardiness and attendance; the other candidates had no such warnings.

(4) Although Plaintiff generally had a good work record, the successful candidate's work record was more impressive.

(5) Plaintiff's supervisors did not recommend Plaintiff for a management position, whereas the successful candidate did receive recommendations from his supervisors.

(6) Plaintiff did not make a good impression on the General Manager concerning his ability to be a production supervisor, whereas the successful candidate did make a good impression.

(7) Plaintiff did not appear to have the people skills needed for the job in that his supervisors reported that he did not get along well with other employ-ees, whereas the successful candidate did get along well with others.

(8) Plaintiff's personal history record did not disclose a history of leadership positions, whereas the successful candidate did have such a history.

(9) Defendant was concerned about Plaintiff's dependability but had no such concerns about the successful candidate.

(Def.'s Mem.Supp.Summ.J. at 10–12.)

Defendant has articulated several legitimate, nondiscriminatory reasons for promoting Petrill instead of Plaintiff. As stated by the Fourth Circuit: "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans,* 80 F.3d at 960 (citing *Burdine,* 450 U.S. at 258–59, 101 S.Ct. 1089; *Young,* 748 F.2d at 198). Plaintiff argues that many of Defendant's considerations are too subjective. Yet, Plaintiff fails to present any evidence that creates a factual dispute with regard to such important criteria as the successful candidate's higher test scores and superior job performance. Even Plaintiff concedes that Petrill's higher test scores may have entitled him to the promotion, as shown by the following testimony from Plaintiff's deposition:

Q. If Terry [Petrill] fairly scored higher than you on the test, then is it right that he got the job?

A. If that's the law, that's what it's governed by, yes, he should get the job.

Q. So if the test results are an important part in whether or not someone gets the job, and if Terry really scored higher than you, then it was proper for him to get the job?

A. Yes.

(Pl.'s Dep.Tr. at 97.)

■ Alas, the burden shifts back to Plaintiff, who must present proof that Defendant's reasons are pretextual. To show pretext, Plaintiff must establish that he was the better qualified candidate for the position sought. *Evans,* 80 F.3d at 960; *Anderson v. City of Bessemer City,* 717 F.2d 149, 153 (4th Cir.1983), *rev'd on other grounds,* 470 U.S.

564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Plaintiff presents no such evidence sufficient to overcome summary judgment. Plaintiff's opinion that he was the most deserving candidate is irrelevant. " 'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *Evans,* 80 F.3d at 960–61 (quoting *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)). Furthermore, unsupported speculation is insufficient to show pretextual discrimination. *Id.* at 960 (citing *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987)).

■ There is no evidence on the record to support a finding that Plaintiff was denied a promotion due to his race. To the contrary, the record shows that Plaintiff was treated as fairly as other candidates for promotion who were white. It is worth noting that, in early January 1997, Defendant decided to promote a black male, Nelson Watson, to a supervisor position. (Westcott 1st Aff. ¶ 13.) Plaintiff contends that Watson was promoted only because of Plaintiff's EEOC action. (Pl.'s Resp. at 5.) Notwithstanding the curious nature of Plaintiff's assertion—that the hiring of a black employee proves discrimination against blacks—the contention amounts to nothing, as Defendant decided to hire Watson before ever receiving notice of Plaintiff's EEOC complaint. (Westcott 2nd Aff. ¶¶ 3,4.) Accordingly, the Court finds that Plaintiff's claims of unlawful discrimination have no merit and must be dismissed.

### III. Conclusion

Accepting as true for the purposes of summary judgment, and drawing all permissible inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to demonstrate a genuine issue for trial.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment [document no. 9] be, and hereby is, **GRANTED.**

This Court will simultaneously file a separate Judgment dismissing Plaintiff's claims in this matter with prejudice.

### JUDGMENT

In accordance with the Order filed simultaneously with this Judgment, **IT IS ORDERED, ADJUDGED, AND DECREED** that this matter be, and hereby is, **DISMISSED WITH PREJUDICE.**

Each party shall bear their own costs.