Lillian R. LEWIS, Appellee,

v.

CENTRAL PIEDMONT COMMUNITY COLLEGE, Appellant.

No. 82–1079.

United States Court of Appeals, Fourth Circuit.

Argued July 21, 1982.

Decided Oct. 4, 1982.

Rehearing and Rehearing En Banc Denied Oct. 28, 1982.

William L. Auten, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellant.

Louis L. Lesesne, Jr., Charlotte, N. C. (Gillespie & Lesesne, Jonathan Wallas, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P. A., Charlotte, N. C., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

HALL, Circuit Judge:

Lillian R. Lewis filed this suit pursuant to the Civil Rights Act of 1886, 42 U.S.C. § 1981, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5(f), alleging that the defendant, Central Piedmont Community College (the College), discriminated against her on the basis of race when it failed to promote or transfer her to several positions for which she applied. The district court, after a trial without a jury, found for the plaintiff with regard to one of the alleged incidents of discrimination and ordered the payment of $2,358.00 in back pay. Additionally, the court awarded plaintiff's counsel $9,964.64 in attorney's fees and costs pursuant to 42 U.S.C. § 1988. From those orders, the defendant appeals. We reverse.

### I.

Lillian Lewis, who is black, graduated from Johnson C. Smith University with a bachelor's degree in economics in 1964. Her curriculum there included two courses in accounting principles and two in intermediate accounting. Subsequent to her graduation, she worked as a key punch operator and, in 1966, began working as a cashier in the business office at the defendant College.

In September, 1975, Lewis applied for a position as an accounting lab instructor in the College's accounting department.[1] She was interviewed by Herbert Burns, the head of the department, who at the time gave no indication that Lewis was not qualified for the job, but did ask whether she would audit several accounting courses as a refresher so that she would be able to handle the job. Although Burns was responsible for reviewing all applications and conducting interviews, the ultimate selection was to be made by his superiors.

Also interviewed for the position was Flora Roberts, a white student in the process of completing the College's two year accounting program. Roberts' record indicated that she had taken a number of courses particularly relevant to the job of lab instructor. In addition to the basic courses in accounting principles and intermediate accounting, Roberts had studied advanced accounting, auditing, and income tax and cost accounting. She eventually was hired for the job.

Following Roberts' selection over Lewis and five other applicants, Lewis, who had heard from several school employees that she had been recommended for the job, contacted David Hunter, the director of personnel, to inquire as to why she had not been selected. She was informed that Roberts was hired because of her superior academic credentials.

In the fall of 1976, Lewis again sought a better position by applying for the job of Senior Accountant in the College's Business

---

1. The accounting lab is a room equipped with materials and staffed with personnel to provide assistance to accounting majors. It is open for the use of all accounting students, but is primarily patronized by those in the basic level accounting courses. According to the head of the accounting department, "[t]he major function of the laboratory instructor is to tutor students on a one-to-one basis in solving the problems given to them by their classroom instructors."

Department. Although the College maintained a written policy to announce such openings in its employee newsletter first, the school's Controller inadvertently placed the initial advertisement in the local city newspaper. Consequently, by the time Lewis applied for the position, it had been filled.

Subsequently, Lewis filed this action seeking declaratory relief, injunctive relief and back pay for lost wages. The College answered denying discrimination and requesting a jury trial on all issues. The district court denied that request and, after a full non-jury trial, concluded that Lewis had not proven discrimination with respect to the 1976 Senior Accountant opening,[2] but that she had been discriminated against by not being hired for the accounting lab position.

On appeal, the College presents three issues for review: (1) whether the district court erred in its finding of racial discrimination; (2) whether the district court erred in refusing defendant's request for a jury trial; and (3) whether the court erred in the amount of attorney's fees awarded. As discussed below, our disposition on the first issue alleviates the need for extensive consideration of the remaining two issues.

## II.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the basic allocation of burdens and order of presentation of proof in cases alleging discriminatory treatment.[3] First, the plaintiff has the burden of establishing a prima facie case of discrimination. Then the burden shifts to the employer to articulate a legiti-mate, non-discriminatory reason for rejecting the plaintiff. The burden of *proving* discrimination, however, remains with the plaintiff and, therefore, if the employer presents legitimate reasons for plaintiff's rejection, it is the plaintiff's burden to prove that those reasons were actually a pretext for discrimination.

■ In order to establish a prima facie case, "[t]he plaintiff must prove by a preponderance of the evidence that she applied for the available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In the case at bar, Lewis established that she was a member of a racial minority and had applied for the position of accounting lab instructor. She presented evidence of her qualifications, which included her academic credentials discussed above, her experience in the College's business office and her ability to perform certain accounting-related tasks in her present job as "DICER accounting specialist" at the school.[4] Finally, she presented evidence which indicated that Herbert Burns had initially recommended her for the job, but later changed his recommendation to urge the selection of Flora Roberts. This last evidence took the form of testimony from other employees who claimed knowledge of Lewis being recommended and a memorandum from Burns to his superior recommending Roberts which referred to a "previous recommendation."

The College countered, primarily through the testimony of Burns, who explained that Roberts was hired because of her stronger

---

2. Lewis has not appealed or cross-appealed to challenge this portion of the lower court's decision.

3. Although *McDonnell Douglas* was a Title VII case and the trial court here treated Lewis' claim concerning the lab instructor position under 42 U.S.C. § 1981, it has been held, and we think correctly, that the *McDonnell Douglas* criteria apply equally to cases arising under Title VII or § 1981. *Hudson v. Int'l Bus. Mach. Corp.,* 620 F.2d 351, 354 (2d Cir.), *cert. denied*

449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281 (7th Cir. 1977); *Sabol v. Snyder,* 524 F.2d 1009, 1012 (10th Cir. 1975); and *Long v. Ford Motor Co.,* 496 F.2d 500, 505 (6th Cir. 1974). *Cf. United States v. Chesterfield County School District,* 484 F.2d 70, 73 (4th Cir. 1973).

4. Lewis was promoted to her present position subsequent to the initiation of this suit.

academic background. Although he did not recall making a prior recommendation for the plaintiff, Burns did testify that he did not consider Roberts initially because her sister worked at the college and he had been told that she could not be considered due to the school's "anti-nepotism" policy. As it turned out, that rule had recently been abolished and, therefore, Roberts was eligible for the job.

After considering all of the evidence, the district court found, *inter alia:* that Lewis was better qualified than Roberts for the position of lab instructor; that Burns initially recommended Lewis for the position of lab instructor, which recommendation was subsequently withdrawn or overruled; that no explanation was given why the recommendation was overruled; and that the College's justification that Roberts had a better academic record was pretextual. Accordingly, the court concluded that Lewis had met her burden of proving discrimination and was, thus, entitled to back pay for the period from 1975 until the time she was eventually promoted in 1978.

■ The critical question in this case is whether, in fact, Lewis was better qualified than Roberts for the position of accounting lab instructor. In our opinion, the finding of the lower court that she was is clearly erroneous and, therefore, we must reverse.

The record in this case indicates that Roberts was much better qualified for the accounting lab instructor job. She was in the process of completing the College's two year accounting program and had received the highest attainable grade in six of her eight accounting courses. As already noted, her curriculum included four advanced accounting courses as well as supporting courses in mathematics, business and economics. Finally, although she did not have extensive practical experience, Roberts had already worked in the accounting lab on a part-time basis as the night lab instructor.

Lewis, on the other hand, had received a four year degree in economics, but had taken only four accounting courses and had no academic training since 1964. She had not studied any advanced accounting in college and overall her grades were poor.[5] Additionally, during her interview for the job, Herbert Burns indicated that it would probably be necessary for her to audit several courses as a refresher so that she "would be able to perform the job."[6]

Through direct examination, Lewis testified that in her present position she is exposed to a wide variety of accounting-related tasks. On cross-examination, however, she admitted that in her prior position as a cashier, the job she held when she sought the position of lab instructor, her duties included very little work involving journal entries and no work with the general ledger. Moreover, through a series of questions posed at her deposition, the College established that Lewis did not even understand the basic concept of double-entry accounting. Consequently, although the plaintiff had some practical experience relevant to the position of lab instructor, it was hardly enough to overcome the deficiencies in her academic record. Therefore, in our opinion, the district court's finding that Lewis was better qualified for the position than Roberts is clearly erroneous.

Proof that the successful applicant was better qualified for the job is not, in and of itself, always sufficient to defeat a claim of racial discrimination. In this case, however, once the College established that Roberts was, in fact, far more qualified than Lewis, there simply was not enough other evidence to support a finding of discriminatory intent. Indeed, the only other evidence which strongly implied possible discriminatory intent, the changed recommendation, loses its strength once it is determined that Roberts was better qualified. The trial court em-

---

**5.** The record indicates that Lewis was on academic probation for poor scholarship during her last semester in college.

**6.** Several years later, Lewis did, in fact, enroll in the College's basic accounting course as a

refresher. On cross examination, she admitted that she opted for this course over a more advanced one because she had been out of school for such a long time.

phasized the fact that apparently Burns initially recommended Lewis and then changed that recommendation to urge Robert's hiring. Burns explained, however, that although Roberts was the one he wanted for the job, there initially appeared to be a problem on the part of the College as to whether she was eligible to be hired. If Lewis had been better qualified, then this changed recommendation would certainly cast suspicion on the school's actual motive. However, since Roberts was clearly the best qualified, any possible inference of discriminatory intent disappears.

In sum, the critical finding supporting the district court's determination of racial discrimination was that Lewis was better qualified than the successful applicant. Since we believe that the court erred in that finding of fact, we hold that the court also erred in concluding that the defendant's selection of Roberts was racially motivated. Accordingly, we reverse.

### III.

As we reverse the lower court's decision on the merits of Lewis' discrimination claim, there is no need for us to reach defendant's contention that it was entitled to a jury trial in this case. Additionally, as a result of our disposition of the primary issue before us, plaintiff can no longer be deemed the "prevailing party" in this action, *see Bagby v. Beal,* 606 F.2d 411, 415 (3rd Cir. 1979), and, thus, is not entitled to attorney's fees under 42 U.S.C. § 1988. Accordingly the district court's order requiring the College to reimburse Lewis $9,964.64 for attorney's fees and costs is also reversed.

### IV.

For the foregoing reasons, that portion of the district court order finding for the plaintiff on the merits and awarding her back pay, and the accompanying order granting attorney's fees and costs are hereby reversed.

REVERSED.

---

* Former Fifth Circuit case, Section 9(1) of Public