753 F.2d 1281
 36 Fair Empl.Prac.Cas. 1800,
36 Empl. Prac. Dec. P 34,980
Indira GAIROLA, Appellant,
v.
COMMONWEALTH OF VIRGINIA DEPARTMENT OF GENERAL SERVICES;
Paul B. Ferrarra; David Lynn; Tracy Hunter; Appellees.
United States of America, Intervenor.
 No. 84-1251.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1984.
Decided Feb. 6, 1985.
 
 Linda L. Royster, Richmond, Va. (Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., on brief), for appellant.
 Michael E. Ornoff, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Virginia, John A. Gibney, Jr., Asst. Atty. Gen., Richmond, Va., on brief), for appellees.
 Harold J. Krent, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., William Kanter, Peter R. Maier, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for intervenor.
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 The plaintiff, Indira Gairola, brought related claims against the Department of General Services for the Commonwealth of Virginia and other named defendants based on alleged employment discrimination because of her race or color in violation of 42 U.S.C. Secs. 1981 and 1983 (1982), and because of her religion and national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. Secs. 2000e, 2000e-17 (1982). Following the consent of the parties and the district court, the Title VII claim was tried before a federal magistrate under 28 U.S.C. Sec. 636(c) (1982), while the sections 1981 and 1983 claims were tried before a jury. Gairola appeals from the magistrate's grant of a directed verdict against her on the race discrimination claims under sections 1981 and 1983 and his entry of judgment for the defendants on all claims. We affirm.
 
 
 2
 On appeal, Gairola raises three issues. First, she argues that because Sec. 636(c) of the Federal Magistrate Act of 1979 is unconstitutional, the magistrate was without jurisdiction to enter judgment against her. Second, she contends that the magistrate erred in granting a directed verdict against her on the sections 1981 and 1983 claims. Finally, she asserts that the magistrate's determination that the defendants did not discriminate against her on the basis of religion or national origin in violation of Title VII was clearly erroneous. We will address these arguments seriatim.
 
 I.
 Factual Background
 
 3
 Gairola, a former employee of the Commonwealth of Virginia, is a 48 year-old practicing Hindu who resides in Richmond, Virginia. She was born in West Pakistan and immigrated to the United States in 1967. The defendants include the Department of General Services for the Commonwealth and three of its employees. Defendant Ferrara is the Director of the Bureau of Product Testing ("Bureau") which is within the Division of Consolidated Laboratory Services ("Division"). Ferrara is also the state chemist. Defendant Lynn is the supervisor of the Food and Animal Remedy Section within the Bureau. Before becoming section supervisor in January of 1981, Lynn had been the team leader supervising the Food Lab. Defendant Hunter is the team leader supervising the Animal Remedy Lab.
 
 
 4
 Gairola was hired as a food chemist by Virginia's Department of Agriculture and Commerce in 1969. After departmental reorganization in 1972, her employer became the Division and she was classified as an entry level chemist. At first, Gairola was assigned to the Food Lab within the Food and Animal Remedy Section. This job required her to identify impurities in food through the use of a microscope. It did not, however, require the use of sophisticated instrumentation. (J.A. 103).
 
 
 5
 In 1976, Gairola was transferred to the Animal Remedy Lab where her team leader became Hunter. Gairola testified that prior to this transfer, Frank McGowan, her section supervisor, told her not to learn instrumentation. (J.A. 35). She did not do so. Gairola conceded, however, that she was repeatedly admonished in her performance evaluations that she received in 1977, 1978, 1979, and 1980 to obtain much needed instrumentation training. (J.A. 106-13). In 1979, Gairola was denied a promotion due to her lack of training on newly acquired sophisticated instrumentation. A white woman, Debra Paul, was promoted to the position Gairola sought. Paul already had considerable college training and practical experience in instrumentation when she was promoted. Nevertheless, Gairola asserts that McGowan's comment to her that she should not learn instrumentation is evidence of defendant's discriminatory intent.
 
 
 6
 Two years later, in June of 1981, Gairola requested that she be transferred to the Feed and Fertilizer Section. After consulting with her supervisor and the supervisor of the Feed and Fertilizer Section, Ferrara refused the transfer request because of substantial doubts he harbored about Gairola's ability to learn the new chemistry and analytical tasks required to work effectively in that section. (J.A. 236-41).
 
 
 7
 During the time Gairola was employed in the Animal Remedy Lab, an incident occurred in which a fellow employee mocked her for wearing the bindi, which is a symbol worn on the head of a Hindu woman to signify that she is married. However, the offending employee, Chuck Bailey, was sternly reprimanded for his unacceptable humor by defendant Lynn, and Paul noted Bailey's behavioral problem in his performance evaluation. (J.A. 262-64, 272).
 
 
 8
 On June 10, 1981, Gairola received a score of 2.6 on her annual performance evaluation. Under Commonwealth employment policy, Gairola's poor evaluation required that (1) she not receive an immediate merit pay increase, and that (2) she be reevaluated within 120 days. If her next evaluation score improved to 2.8 she would then receive her merit increase and no future punitive action would be taken. But if her score did not improve to the requisite 2.8, Commonwealth policy dictated that her supervisors were to determine whether her poor performance was due to an attitudinal problem or a lack of necessary skills. If the former were true, she would be fired. If the latter were true, she would be reassigned to a position more appropriate to her skill level and she would be terminated only if she refused the reassignment.
 
 
 9
 Gairola's performance was closely monitored by her supervisors while on probation. During this time, Gairola was given a blind sample test. To analyze the samples, it was necessary for Gairola to utilize sophisticated instruments. Gairola completely failed the test, obtaining incorrect results on all three samples she analyzed. Her failure revealed that she had considerable difficulty in analyzing both routine and nonroutine samples.[1] On October 1, 1981, Gairola was reevaluated in compliance with Commonwealth policy. In this evaluation, she received a score of 2.3 which was below the minimum permitted under the applicable Commonwealth evaluation procedures. As a consequence, Ferrara searched for a vacant position that matched Gairola's qualifications. The only such position available was that of a Laboratory Technician in the Pesticide Residue Lab. He offered Gairola this position. However, she refused the offer and accordingly was discharged by Ferrara.
 
 II.
 The Federal Magistrate Act
 
 10
 Eight federal circuits have held that Section 636(c) of the Federal Magistrate Act is immunized from any constitutional infirmity because (1) the Act requires that all parties and the district court consent to transfer of the case to a magistrate and (2) the district court retains sufficient control over the magistrate, including the authority to vacate the reference on its own motion, to render the magistrate a mere adjunct of the district court. Fields v. Washington Metropolitan Area Transit Authority, 743 F.2d 890, 893-95 (D.C.Cir.1984), Petition for cert. filed, 53 U.S.L.W. 3291 (U.S. Sept. 29, 1984) (No. 84-519); Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037, 1045 (7th Cir.1984); Lehman Bros. Kuhn Loeb v. Clark Oil & Refining Co., 739 F.2d 1313, 1316 (8th Cir.1984); Puryear v. Ede's Ltd., 731 F.2d 1153, 1154 (5th Cir.1984); Collins v. Foreman, 729 F.2d 108, 120 (2d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); Goldstein v. Kelleher, 728 F.2d 32, 36 (1st Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc., 725 F.2d 537, 547 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); Wharton-Thomas v. United States, 721 F.2d 922, 929-30 (3d Cir.1983). For the same compelling reasons, we decline to depart from the collective judgment of our sister circuits that Section 636(c) of the Federal Magistrate Act does not violate Article III of the Constitution.
 
 III.
 The Directed Verdict
 A. Standard of Review
 
 11
 Whether a motion for a directed verdict should have been granted is a question of law requiring de novo review on appeal. Bridges v. Groendyke Transport, Inc., 553 F.2d 877, 878 (5th Cir.1977); see also Miller v. Premier Corp., 608 F.2d 973, 981 n. 8 (4th Cir.1979); 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2536 (1971 & Supp.1984). An appellate court may not, when reviewing the propriety of a directed verdict, "weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment of the facts for that of the jury." Tights, Inc. v. Acme McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). Although the courts have adopted numerous formulations for the standard of review regarding a directed verdict, the test is essentially whether, without weighing the evidence or considering the credibility of the witnesses, "there can be but one conclusion as to the verdict that reasonable jurors could have reached." Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir.1981); see also Nationwide Mutual Insurance Co. v. McLaughlin, 429 F.2d 1317 (4th Cir.1970). Unless there is " 'substantial evidence to support' the verdict asked of the jury," the reviewing court must direct the verdict upon request. Business Development Corp. v. United States, 428 F.2d 451, 453 (4th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 266 (1970) (quoting Hawkins v. Sims, 137 F.2d 66, 67 (4th Cir.1943)).
 
 
 12
 As a consequence, the case should be withdrawn from the jury when any verdict in favor of the nonmoving party necessarily will be premised upon "speculation and conjecture." Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958). The question is not whether there is no evidence, but whether there is sufficient evidence upon which a jury can properly proceed to reach a verdict, Ralston Purina Co. v. Edmunds, 241 F.2d 164, 167 (4th Cir.), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957), although a mere scintilla of evidence is not enough to defeat a motion for a directed verdict. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1929).
 
 B. Applying the Standard of Review
 
 13
 To avoid a directed verdict, the plaintiff must present sufficient evidence to establish a prima facie case. Under Title VII and either Sec. 1981 or Sec. 1983, the elements of the required prima facie case are the same. Lewis v. University of Pittsburgh, 725 F.2d 910, 915 n. 5 (3d Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984); Huebschen v. Department of Health and Social Services, 716 F.2d 1167, 1170 (7th Cir.1983); Lincoln v. Board of Regents, 697 F.2d 928, 935 n. 6 (11th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983); Gray v. Board of Higher Education, 692 F.2d 901, 905 n. 8 (2d Cir.1982); Lewis v. Central Piedmont Community College, 689 F.2d 1207, 1208 n. 3 (4th Cir.1982), cert. denied, 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983); Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir.1980); Johnson v. Alexander, 572 F.2d 1219, 1223 n. 3 (8th Cir.), cert. denied, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978). Absent direct evidence of discriminatory treatment, those elements require the plaintiff to show:
 
 
 14
 (i) that he is a member of the protected class; (ii) 'that he ... was qualified for [the] job [and his performance satisfied his employer's expectations] ...; (iii) that, despite his qualifications [and performance], he was [dismissed]; and (iv) that, after his [dismissal], the position remained open and his employer continued to seek applicants from persons of complainant's qualifications.'[2]
 
 
 15
 Smith v. University of North Carolina, 632 F.2d 316, 332 (4th Cir.1980) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Ultimately, the establishment of a prima facie case of employment discrimination requires proof by a preponderance of the evidence that the plaintiff was not promoted or dismissed "under conditions which, more likely than not, were based upon impermissible racial considerations." Young v. Lehman, 748 F.2d 194, 196 (4th Cir.), petition for cert. filed, 53 U.S.L.W. 3568 (U.S. Feb. 1, 1984). Gairola asserts that her job performance satisfied the reasonable expectations of her employer and that a less qualified white employee, Debra Paul, was promoted to a position she sought for discriminatory reasons. We disagree.
 
 
 16
 The evidence reveals that Gairola was dismissed because she failed to satisfy her employer's reasonable performance expectations which were contained in the Commonwealth's evaluation guidelines upon which she and all of her fellow employees were regularly judged. Despite repeated notifications of her deficiencies in instrumentation, Gairola never obtained the instrumentation training required by her employer. Without such training, Gairola could not perform adequately in defendant's Animal Remedy Lab.
 
 
 17
 We have previously recognized that the inability to operate a machine fundamental to job performance is a sufficient nondiscriminatory reason for discharge or the denial of a promotion. See, e.g., EEOC v. Federal Reserve Bank, 698 F.2d 633, 670-71 (4th Cir.1983) (inability to operate reader-sorter machine justified denial of promotion). Moreover, Gairola failed a routine blind sample test. Gairola's failure of this test was considered a serious performance deficiency by defendants because the ability to successfully analyze blind samples was fundamental to her job. Gairola received a poor performance evaluation which under Commonwealth policy required that she be placed on probation. Although Gairola was aware that she needed to improve,[3] her performance during the probationary period actually worsened.
 
 
 18
 Gairola argues that Paul's promotion over her is evidence of defendants' discriminatory treatment because she was the better qualified candidate. To support this argument, Gairola's sole evidence is that Paul is a white woman who had been employed by the Commonwealth for fewer years than she when the promotion was given.
 
 
 19
 Under Title VII, the burden is on the plaintiff to establish that she was the better qualified candidate for the promotion sought. Young, 748 F.2d at 198; Anderson v. Bessemer City, 717 F.2d 149, 153 (4th Cir.1983), cert. granted, --- U.S. ----, 104 S.Ct. 3532, 82 L.Ed.2d 837 (1984); Federal Reserve Bank, 698 F.2d at 672. Gairola has not satisfied this burden. Paul was more qualified for the promotion inasmuch as she had taken a college course in instrumentation and had received considerable practical experience operating technical instruments since she began her employment with the Commonwealth in 1979. Because instrumentation ability was fundamental to the job Gairola sought, Paul was the more qualified, albeit the later hired, applicant for the position. See, e.g., Young, 748 F.2d at 198 (individual with 9 years of work experience was more qualified for the particular position sought than the one with 12 years of experience); Lewis v. Central Piedmont Community College, 689 F.2d at 1210 (better qualified person for the position had greater academic preparation but less practical experience).
 
 
 20
 Neither Title VII nor sections 1981 and 1983 require an employer to adopt a life of economic altruism and thereby immunize protected class members from discharge or demotion despite their poor performance and inadequate qualifications. Rather, these antidiscrimination remedies merely preclude an employer from treating some employees less favorably than others "because of" their race or some other similarly impermissible characteristic. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); Lewis v. University of Pittsburgh, 725 F.2d at 914. Gairola never met her employer's reasonable expectations nor was she as well qualified as the individual chosen for the promotion she had sought. Failing to satisfy two prongs of the McDonnell Douglas four-part test, Gairola did not establish a prima facie case. See Lovelace, 681 F.2d at 240 (Insofar as "the plaintiff's evidence fails even to support the unadmitted predicates of the [McDonnell-Douglas] presumption ... [judicial] inquiry ... ends and the motion [for directed verdict] can be granted.").
 
 
 21
 Even assuming that Gairola established her prima facie case, defendants have adequately rebutted the presumption of discrimination under McDonnell Douglas by articulating legitimate reasons for her dismissal without a showing that such reasons were merely a pretext for unlawful discrimination. Defendants contended below that Gairola lacked instrumentation training and that her performance was generally inadequate. These were legitimate reasons for Gairola's dismissal that shifted the burden of producing evidence of pretext to Gairola. The only evidence of pretext Gairola offered was an isolated incident in which a fellow employee mocked her Hindu attire. The defendants never encouraged this employee's shameful conduct, however, and they reprimanded him for it.
 
 
 22
 Equally significant, there was substantial evidence that defendants' articulated justifications for Gairola's dismissal were not pretextual. First, she conceded repeatedly on cross-examination that she had been told years before her termination that she needed to gain proficiency in instrumentation. (J.A. 104-13). Second, Gairola was given the opportunity to transfer to a position she was more qualified to perform after she failed to improve during her probationary period. Such an offer was consistent with Commonwealth employment policy and with the conclusion that defendants' reasons for eventually dismissing Gairola were not a mere pretext for unlawful discrimination. Finally, defendants' reasons for dismissing Gairola were "clear and reasonably specific." Burdine, 450 U.S. at 258, 101 S.Ct. at 1096. The objective nature of these reasons for termination sharply contrasts with the often vague and chimerical reasons produced by subjective evaluation processes of many employers which have been condemned by numerous courts. See, e.g., Grano v. Department of Development, 699 F.2d 836, 837 (6th Cir.1983); Royal v. Missouri Highway & Transportation Commission, 655 F.2d 159, 164 (8th Cir.1981); Page v. Bolger, 645 F.2d 227, 230 (4th Cir.1981); Rowe v. General Motors Corp., 457 F.2d 348, 359 (5th Cir.1972).
 
 
 23
 Concededly, Gairola offered some evidence (almost exclusively her own testimony) in support of her allegations of discrimination. But where, as here, the evidence is so overwhelmingly to the contrary, the directed verdict was neither improvident nor improper. Gairola never offered the "substantial evidence" needed to support the elements of her prima facie case and avoid an adverse directed verdict. Establishment of the prima facie case is not a requirement that can be overlooked by the courts or sidestepped by aggrieved employees under either Title VII or sections 1981 and 1983. Consequently, we conclude that the magistrate correctly granted defendants' motion for a directed verdict on Gairola's sections 1981 and 1983 claims of employment discrimination.[4]
 
 IV.
 
 24
 The Magistrate's Determination that Defendants Did Not
 
 Violate Title VII
 
 25
 The factual findings of a magistrate are entitled to the same deference upon review as those of the trial court under the clearly erroneous standard. Archambault v. United Computing Systems, Inc., 695 F.2d 551 (11th Cir.1983). Because the inquiry regarding the existence of discriminatory intent is purely factual, the finding of a district court on discriminatory intent may be reversed only if it is clearly erroneous. Pullman-Standard v. Swint, 456 U.S. 273, 289-90, 102 S.Ct. 1781, 1790-91, 72 L.Ed.2d 66 (1982). After thorough review of the record, we conclude that ample evidence supported the magistrate's finding that the defendants acted without any discriminatory motive when they dismissed Gairola. The magistrate's finding was not clearly erroneous and we are without power to disturb it.
 
 
 26
 Accordingly, the decision of the magistrate is hereby
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 From Gairola's failure on the blind sample test alone, defendant Hunter concluded: "I had no doubt in my mind that [Gairola] could not perform the functions of an Analytical Chemist in my laboratory." (J.A. 311)
 
 
 [2]
 As an initial matter, we note that the McDonnell Douglas presumption "with all its ensuing complexities" need not be resorted to where the Title VII claimant has "carried [her] original production burden on the motivational issue ... by direct evidence or by indirect evidence ... [establishing] that but for claimant's [race or other impermissible characteristic she] would not have been demoted." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982) (ADEA case where proof scheme from Title VII borrowed). No such independent evidence, however, has been presented by Gairola on the motivational issue. As a result, she must resort to the McDonnell Douglas presumption to establish her prima facie case of employment discrimination. See id
 
 
 [3]
 In Gairola's 1980 performance evaluation, she was alerted that "[i]mprovement is needed to meet job requirements." (J.A. 111) (emphasis added). By 1980, therefore, Gairola's performance had deteriorated to the point where she was no longer satisfying the minimum requirements of her job
 
 
 [4]
 Under similar circumstances, we have warned that "[t]hough [employment] discrimination is undoubtedly a possibility in any case of this kind, and though its easy concealment is a constant danger in attempts to vindicate this statutory right, a jury may nevertheless not be allowed to infer it from evidence that does no more than [at most] suggest it as a possibility." Lovelace, 681 F.2d at 245. If a directed verdict is to have any meaning and force in the context of Title VII, we must uphold the trial court's removal of the case from the jury when the only evidence in support of the plaintiff's prima facie case is based on unfounded conjecture or the fanciful possibility that her disfavorable treatment was the result of discrimination and not displeasure with her performance