748 F.2d 194
 36 Fair Empl.Prac.Cas. 302,
35 Empl. Prac. Dec. P 34,762,
35 Empl. Prac. Dec. P 34,809
Margaret YOUNG, Appellee,
v.
John LEHMAN, Secretary, Department of the Navy, Appellant.
 No. 83-1903.
 United States Court of Appeals,
Fourth Circuit.
 Argued Aug. 27, 1984.
Decided Nov. 5, 1984.
 
 George E. Lawrence, Jr., Sp. Asst. U.S. Atty., Washington, D.C. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Pamela A. Smith, Asst. Counsel, Dept. of the Navy, Washington, D.C., on brief), for appellant.
 Joan M. Wilbon, Washington, D.C. (Wilbon, Killingham & Green, Robert Alexander, Arlington, Va., on brief), for appellee.
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 John Lehman, as Secretary of the Department of the United States Navy, appeals from the decision of the district court which held that Margaret Young was denied a promotion in one of the Navy commands on the basis of racial discrimination. The district court concluded that Young presented a prima facie case of discrimination and that the Navy's proffered non-discriminatory reasons were pretextual in that they were "unworthy of credence." We reverse.
 
 
 2
 * The Navy Ship Engineering Center (NAVSEC) issued vacancy announcements on November 1, 1976, and November 11, 1976, each advertising the position of Supervisory Personnel Management Specialist. The ultimate duty stations were to be Arlington, Virginia.
 
 
 3
 Margaret Young, a black female, submitted an application for the Supervisory Personnel Management Specialist position along with six other applicants, including Christopher Iekel, a white male, who was ultimately selected.
 
 
 4
 Some three weeks after the first vacancy announcement,[1] Iekel was detailed from Hyattsville, Maryland to Crystal City, Virginia to serve temporarily in the position of Supervisory Personnel Management Specialist--the job for which both he and Young applied. He was employed in that capacity until the end of March 1977.
 
 
 5
 John McCabe, Personnel Director of the Naval Sea Systems Command (NAVSEA), supervised the selection of the applicant who would receive the permanent promotion to the position. He was assisted by Nancy Panella and William Fordyce, who was later replaced by Rosina McWhirter. McCabe, Panella, and McWhirter are Navy personnel specialists and are all white.
 
 
 6
 Following the announcement of the two vacancies, Panella conducted interviews of a number of the applicants, including Iekel and Young. This action contravened Navy regulations which require that a selection panel be used to fill all supervisory positions. When Panella's violation of the regulations became known, the interviews were terminated and a selection panel was convened by Fordyce to evaluate and rank the applicants for the vacancies.
 
 
 7
 The panel consisted of Raye J. Montague, who had served on approximately thirty selection panels, Arthur L. Fuller, who had also served on numerous panels during his twenty-two years with the Navy, and Louis H. Howard, who was qualified by his background to serve on such panels. Fuller was designated as chairman and as the Equal Employment Opportunity (EEO) representative. Montague and Fuller are black.
 
 
 8
 The panel, after consulting with McWhirter and Panella, established a procedure for evaluating and rating the applicants. It was determined that the panel would meet three times for rating purposes: first, to review the individual applicants and rate the candidates on that basis; next, to conduct interviews and rate the applicants again; and finally, to meet as a group to discuss their results and rate the candidates a third time. The panel used six criteria to rate each applicant, with a weight assigned to each element: (1) understanding of systems method and administrative machinery (weighted 1); (2) ability to organize problems and apply sound judgment (weighted 1); (3) oral and written communications skills (weighted 1); (4) capacity to employ knowledge and abilities in resolving problems (weighted 1); (5) supervisory potential (weighted 2); and (6) substantive classification and staffing knowledge (weighted 3).
 
 
 9
 The panel, on January 24, 1977, completed the Merit Promotion Certificate which reflected their final recommendations. Young and another applicant were rated best qualified for the two vacancies, while Iekel and one other candidate were listed in a second group as being highly qualified. The panel delivered the Merit Promotion Certificate and rating sheets to McWhirter.
 
 
 10
 McWhirter scrutinized the recommendations and ratings of the panel and discovered the notation "My guess she's black" on a rating sheet which had been completed by panel chairman Fuller. This rating sheet dealt with an applicant other than Young or Iekel. McWhirter also felt that the panel members had incorrectly inflated their assessment of Young's experience, and had not properly evaluated supervisory performance appraisals. McWhirter thus concluded that the panel's work was improper, and she recommended that the Navy reject the recommendations and form a new panel.
 
 
 11
 The panel's rating and ranking sheets were also reviewed by Yvonne Jones, a black EEO official, who concluded that the comment made by Fuller constituted evidence of improper racial consideration sufficient to warrant a new selection panel. McWhirter and Jones reported their findings to McCabe who ultimately rejected the panel's recommendation and directed that a new panel be formed. The Command Deputy EEO Officer concurred in McCabe's decision.
 
 
 12
 A new panel was then formed, consisting of Mertina Monk, Harry Stoutmeyer and William DaRosa. This panel, using the same criteria as those employed by their predecessors, ranked Iekel highly qualified, and recommended him for the available position on March 18, 1977. Young, on the other hand, was ranked sixth out of eight applicants. Iekel was appointed on March 25, 1977, after McWhirter and Jones reviewed the second panel's rating and ranking sheets and found no evidence of impropriety.
 
 II.
 
 13
 The district court correctly considered the evidence developed during the trial of the case under the standards announced in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980). The initial burden was upon Young to prove by a preponderance of the evidence that she was not promoted to the position under conditions which, more likely than not, were based upon impermissible racial considerations. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094; International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). After Young established her prima facie case, the Navy was required to articulate a legitimate non-discriminatory reason for its promotion choice. Young was then obligated to demonstrate that the Navy's reasons were pretextual. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; Cuthbertson v. Biggers Bros., Inc., 702 F.2d 454, 458 (4th Cir.1983).
 
 
 14
 We agree with the district court that Young established a prima facie case of discrimination. We disagree, however, with the court's conclusion that the proffered non-discriminatory reasons advanced by the Navy for choosing Iekel over Young and others were pretextual in that they were "unworthy of credence."
 
 
 15
 Young contends, and the trial court agreed, that there was evidence from which it could be concluded that the Navy preselected Iekel for the promotion and tailored the selection process to obtain the desired result. She argues that Iekel's detail to the position in question for longer than the regulations provide,[2] the improper applicant interview conducted by Panella, McWhirter's concern with personal conflicts between Young and Panella, and the extraordinary scrutiny given to the first panel's recommendations and ratings, amply support this conclusion.
 
 
 16
 The Navy counters by asserting that but for the rejection of the first panel's conclusions, Iekel's detail would have ended within the 60-day limit.[3] It characterizes Panella's interviews as a "mix-up," arguing that there was no evidence that they were conducted to assist or hinder any applicant. The Navy also argues that there is no evidence that race played any part in McWhirter's concern about the Young-Panella work relationship. With respect to the process employed in reviewing the work of the first panel, it contends that McWhirter's actions were in accordance with standard Navy personnel procedures. The Navy also points to EEO official Yvonne Jones' independent discovery of Fuller's notation.
 
 
 17
 We agree with the Navy that there is no clear-cut indication that race played a part in choosing the successful applicant. In Burdine, however, the Supreme Court indicated that the burden of establishing a prima facie case is not a heavy one. It may be satisfied by showing that a qualified applicant "was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253, 101 S.Ct. at 1094. We feel that the evidence detailing the activities of the selection personnel is sufficient to establish a prima facie case of racial discrimination under this relatively easy test. However, the Navy articulated valid non-discriminatory reasons for Iekel's selection which were not proven to be pretextual.
 
 
 18
 The Navy's first asserted non-discriminatory reason was that Iekel had been nominated by a properly chosen and impartial second panel. The trial court concluded that this explanation was unworthy of credence. We disagree. We perceive no sufficient reason to substitute our judgment for that of the Navy in concluding that there was an adequate basis to dissolve the first panel and convene a new one. The chairman wrote on an evaluation sheet that one of the candidates was apparently black. The Navy selection officials did not unilaterally disband the panel on this basis, but took action only after Mrs. Jones, the EEO official, insisted that the panel's process was tainted by this racial comment. Likewise, there is no evidence of improper racial motivation in forming the second panel. Panel member Monk is black, Stoutmeyer is white, and DaRosa is Asian. While it is obvious that the first panel was at least technically tainted (a technicality that matured into a valid reason for disbanding the panel when the Navy's EEO office identified the racial notation as sufficient reason for disregarding the panel's work), it is clear that the second panel was correctly selected. In any event, the disbanding of the first panel and the selection of the second panel were, at most, mediate procedures that are insulated from a Title VII attack by our decision in Page v. Bolger, 645 F.2d 227, 233 (4th Cir.1981), cert. denied, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1982).
 
 
 19
 As its second non-discriminatory reason for selecting Iekel, the Navy asserts that he was better qualified than Young. Again, we agree that this was a properly articulated reason which was not shown by Young to be pretextual. Although Young worked for the Navy for twelve years, while Iekel was employed for only nine years, the record indicates that Iekel worked for a longer period in positions emphasizing classification and staffing--the criteria weighted most heavily by both panels. Iekel received two personal awards, a special achievement award for outstanding performance as an acting supervisor of a personnel group, and a letter of appreciation for personnel team leadership work. Iekel also consistently received above-average performance appraisals. On the other hand, Young, although awarded one performance commendation, received only average performance ratings that included negative comments citing personal clashes, conflicts, and her poor attitude towards her supervisor. Young's leave record indicated nearly 30% absenteeism during 1976, the year for which she was last evaluated.
 
 
 20
 Implicit in the district court's opinion is a finding that Young is qualified for the promotion. The evidence sustains that opinion. The record, however, demonstrates that Iekel is more qualified than Young.[4] The rule in this circuit is that where relative qualifications are advanced as the nondiscriminatory reason for an employment decision, the plaintiff has the burden of establishing that she was better qualified than the successful applicant. Anderson v. City of Bessemer City, 717 F.2d 149, 153 (4th Cir.1983), cert. granted, --- U.S. ----, 104 S.Ct. 3532, 82 L.Ed.2d 837 (1984); EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633, 672 (4th Cir.1983). Once the Navy's evidence showed that its reason for promoting Iekel was based on relative qualifications, Young had the burden of proving the reason pretextual, i.e., that she was better qualified. She failed to accomplish this task, and the district court erroneously concluded that the reason was "unworthy of credence."
 
 
 21
 In view of the above, the judgment of the district court is reversed.
 
 
 22
 REVERSED.
 
 
 23
 The two positions announced in the November 1 and November 11 advertisements were identical but the second vacancy was never filled. It is the position advertised on November 1 that is in issue in this appeal.
 
 
 
 [2]
 Naval Material Command Instruction 12340.4A p 7a(4) (September 28, 1972) provided that details of more than sixty days to a higher grade position should be made by competitive procedures. As stated previously, Iekel's detail, which was not made using competitive procedures, began on November 30, 1976 and terminated with his appointment in March, 1977
 
 
 [3]
 The first panel made their recommendation on January 24, 1977, fifty-five days after Iekel's detail
 
 
 [4]
 The district court apparently agreed with this assessment, stating at one point:
 I took careful notes here today, and there is no question but what the book on Mrs. Young was that she wasn't the most qualified person in the world.
 * * *
 I am going to have to consider that on their using this remark that Fuller put on his report as being a pretextual reason for hiring somebody [Mr. Iekel], who I believe is actually better qualified.