UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JOHN R. YOUNG,

       *Plaintiff-Appellant,*

v.

JO ANNE BARNHART, Commissioner,
Social Security Administration,

       *Defendant-Appellee.*

No. 01-2376

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-00-1684-S)

Argued: September 23, 2002

Decided: December 3, 2002

Before MICHAEL and GREGORY, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Richard Lee Swick, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant. Michael Anthony DiPietro, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Heidi S. Rhodes, SWICK & SHAPIRO, P.C., Washington,

D.C., for Appellant. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

John R. Young, a white, male employee of the Social Security Administration, claims that the Administration discriminated against him on the basis of race, gender, and in retaliation for his 1991 EEO claims, in violation of Title VII. Young alleges that he was discriminated against when he did not receive Recognition of Contribution awards in 1997 and 1999, and when he was passed over for promotions to the GS-10 and GS-11 pay levels. He appeals the district court's grant of summary judgment to the Administration. Finding no error, we affirm.

I.

John R. Young claims that the Social Security Administration ("the Administration") began discriminating against him in 1996, when Sylvia Graves, an African-American woman, became his immediate supervisor. At their first meeting, Graves asked Young if he was friendly with Jimmy Hanshew, who had a reputation within the Administration of being a racist. Young explained that he and Hanshew were not friends, but Graves allegedly continued to pester Young about his relationship with Hanshew. When awards were given out in 1997, Young was passed over for a Recognition of Contribution ("ROC") award.[1] In August 1997, Young applied to become

---

[1]Recognition of Contribution awards contain a cash bonus and are used by the Administration in considering candidates for future promotions.

a Claims Authorizer ("CA"), which would have promoted him to the GS-11 level. In 1998, he learned he was not selected for any of the available CA positions.

In October 1997, Catherine Frederick, a white female, replaced Graves as Young's supervisor. Shortly thereafter, Young applied for a position as a Post Entitlement Team Leader ("PETL"), to be compensated at the GS-10 level. Before drafting a recommendation for Young, Frederick requested input from Young's previous supervisors, including Sylvia Graves. In her recommendation, Frederick rated Young as "highly recommended," the highest possible rating. He contends, however, that the passive tone and tepid language in Frederick's letter was designed to undermine his candidacy. In March 1998, Young learned that he had not been selected for any of the twenty-six PETL positions. Instead, the administration had hired twenty African-American women, four white women, one black man, and one white man.

Catherine Frederick was replaced as Young's supervisor by Edith Smith, an African-American female, in April 1998. Smith came to this post having once been found to have discriminated against a white, male employee.[2] Young insists that Smith refused to allow Young to mentor new employees, thereby denying him the opportunity to gain credit towards a future ROC award. When employees went to Young for assistance anyway, Smith instructed them to stop. She explained, "I had told employees not to tie up other people if they have questions that would take a long time." In 1999, Young learned that he had not been given a ROC award. Smith sat on the awards panel for that period.

Based on this evidence, Young alleges that he was discriminated against on the basis of his race, gender, and prior EEO activity[3] when

---

[2]Mike Zito, another Administration employee, reportedly filed an Equal Employment Opportunity ("EEO") claim in 1991, wherein he alleged that Smith discriminated against him. No direct evidence of the Zito EEO claim is in the record. However, Smith was questioned about the case in her deposition. She testified that the EEOC "ruled in [Zito's] favor."

[3]In 1991, Young filed two EEO complaints, both of which were settled by 1994.

he did not receive: (1) a ROC award in 1997; (2) the CA promotion in 1998; (3) the PETL promotion in 1998; and (4) a ROC award in 1999.

Appellee filed a motion to dismiss, or in the alternative, a motion for summary judgment. After the close of discovery, the district court granted the motion in its entirety. Young filed a motion to alter the judgment pursuant to Rule 59(e), and further asked that he be allowed to amend his complaint to better articulate his allegations relating to the CA promotion. The court denied both of these motions. Young appeals.

## II.

This Court reviews *de novo* a district court's grant of a motion for summary judgment or a motion to dismiss. *Zeneca, Inc. v. Shalala*, 213 F.3d 161, 167 (4th Cir. 2000); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This Court reviews the denial of a Rule 59 motion for abuse of discretion. *Temkin v. Frederick Co. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991).

## III.

### A.

Appellant argues that, in refusing to give him ROC awards in 1997 and 1999, the Administration discriminated against him on the basis of: (1) race and gender in violation of 42 U.S.C. § 2000e-2; and (2) reprisal in violation of § 2000e-3. Any claim based on the 1997 award, however, is time-barred, as Young failed to contact an EEO counselor within forty-five days of the effective date of the personnel action, as required by 29 C.F.R. § 1614.105(a)(1).[4]

---

[4]Young insists that the 45-day clock should not have begun to run until some unspecified date when he first learned of the alleged discrimination behind the Administration's action. This Circuit, however, has expressly rejected this approach. "[I]t is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the filing period." *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-89 (4th Cir. 1990) (*en banc*).

As for the 1999 award, to survive a motion for summary judgment, Young first must establish a *prima facie* case of discrimination.[5] In order to state a *prima facie* claim for race or gender discrimination, Young must show: (1) that he belongs to the protected class; (2) that he was qualified for the promotions he sought; (3) that, despite his qualifications, he was rejected; and (4) that the circumstances of his rejection give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Page v. Bolger*, 645 F.2d 227, 229-30 (4th Cir. 1981) (*en banc*). The *prima facie* standard for retaliatory discrimination is roughly analogous; to wit, whether: (1) the plaintiff engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001); *Beall v. Abbott Laboratories*, 130 F.3d 614, 619 (4th Cir. 1997).

If Young were to succeed in establishing a *prima facie* case, then the burden would shift to the Administration to articulate a legitimate, nondiscriminatory reason for the action taken against him. *McDonnell Douglas*, 411 U.S. at 802-03; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). If the Administration meets its burden, then the onus would be on Young to show that the nondiscriminatory reasons are not worthy of credence. *McDonnell Douglas*, 411 U.S. at 804-05. "The rule in this circuit is that where relative qualifications are advanced as the nondiscriminatory reason for an employment decision, the plaintiff has the burden of establishing that she was the better applicant." *Young v. Lehman*, 748 F.2d 194, 198 (4th Cir. 1985).

Assuming that Young could establish a *prima facie* case of discrimination, the Administration is still entitled to summary judgment under the *McDonnell Douglas* burden-shifting framework because Young has failed to demonstrate that the Administration's nondiscriminatory reasons are pretextual. The Administration observes that

---

[5]The Administration contends that the denial of the ROC awards are not "adverse employment actions" for the purpose of Title VII. Because we affirm the district court on other grounds, we do not reach this argument.

candidates for the ROC awards were ranked using objective criteria, and that there was a tie between Young and another employee for the last ROC award. In breaking this tie, the awards panel considered the opinion of William Bonarrigo, a white male and one of Young's supervisors. Bonarrigo explained:

> The biggest problem with the Complainant was his application of time. He was often absent from his work station . . . . It was brought out in the awards panel meeting that a system had been set up by some employees to have another employee call them if the Complainant was at their desk talking. That way the employee would have an excuse to break off the conversation and have the Complainant leave.

Young has not presented any evidence why the respondent's nondiscriminatory reason is not worthy of credence. Thus, the Administration was entitled to summary judgment.

### B.

The district court also properly dismissed Young's failure-to-promote claims because Young has failed to establish a *prima facie* case of race, gender, or retaliatory discrimination. Young's case turns on whether the circumstances of his rejection give rise to an inference of discrimination. He has no evidence of hostile remarks, derogatory innuendos, or anything to suggest that his race, gender, or prior EEO activity played a role in the promotion decisions.[6] In addition, he cannot show that he was more qualified than any applicant who actually received a PETL position.

The Administration's hiring procedure for the PETL positions was

---

[6]Young attempts to establish a *prima facie* case based on the fact that: (1) Sylvia Graves associated him with Jimmy Hanshew, who had a reputation as a racist; and (2) twenty of the twenty-six individuals hired for PETL positions were African-American women. At most, however, the Hanshew evidence only suggests that Graves might have disliked Young because of his alleged friendship with a racist, not because of Young's race. As for the statistical evidence, it is insufficient to establish a *prima facie* case of Title VII discrimination on its own.

as follows. Based on objective criteria, candidates were placed on a Best Qualified List ("BQL"). A ranking committee then considered and ranked each candidate on the BQL. The ranking list was presented to David Dale Danner, Assistant Associate Commissioner for Disability Benefits. After reviewing the BQL, the ranking list, and each applicants' recommendations, Danner selected twenty-six individuals for PETL positions.

Young alleges that several African-American women were incorrectly placed on the BQL because they failed to earn enough qualifying points to make the list. Renee Marie Brooks, for example, allegedly lacked the full, verified, fifty points necessary to make the list because she was given five points for her education and training when she was only entitled to one point. Young makes similar claims about Darlene Fisher, Cynthia Holland, Karen Savage, and Benoloa Wright, each of whom allegedly received one point beyond what they had earned. These additional points were significant, Young insists, because without them these women would not have made the BQL. Thus, Young argues that he was "more qualified" than these candidates who were placed on the BQL and eventually selected for PETL positions.

Even if these women were erroneously included on the BQL, this fact does not mean that Young was more qualified than any of them. Each candidate on the BQL had an equal opportunity of being placed on the ranking list that was sent to Danner. The ranking committee looked at all of the applicants and ranked them without any regard as to the number of points they that had received before being placed on the BQL. Instead, the committee considered recommendations, job performance, and other factors that had nothing to do with the BQL. It was at this stage that the six, female applicants rose above Young.

To put it simply, the number of BQL points that a person earned had no impact on the eventual hiring decisions. Even if the points were miscalculated, leading to an erroneous compilation of the BQL, the list does not give rise to an inference of discrimination. As a result, Young has failed to establish a *prima facie* case.

## C.

Finally, Young appeals the district court's denial of his Rule 59(e) motion. Young insists that the Administration sought summary judg-

ment only on the PETL/GS-10 position, not the Claims Authorizer/GS-11 job, but that the district court dismissed both claims. Young contends that this dismissal was an abuse of discretion. However, Young's initial complaint repeatedly states that the Administration failed "to promote plaintiff to the GS-10/11 level position for which he applied in 1998." Never does the complaint refer to the GS-10 and GS-11 positions separately. That is, Young initially viewed his case as framing one failure-to-promote claim. Therefore, the district court did not abuse its discretion in dismissing that single claim.

IV.

For the foregoing reasons, the district court's orders are affirmed.

*AFFIRMED*